United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Yelina Moragas, individually, and on behalf of J.M., a minor, Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 19-21517-Civ-Scola ) |
| School Board of Miami-Dade County, Defendant. | ) ) ) |

### Opinion Order Granting Motion to Dismiss

Plaintiff Yelina Moragas ("Moragas"), on behalf of herself and her minor son, J.M., sues Defendant School Board of Miami-Dade County (the "Board") for alleged violations of Title II of the Americans with Disabilities Act, 48 U.S.C. § 12132 ("ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"). These claims arise out of the Board's alleged failure to provide a paraprofessional to assist J.M., who is physically disabled, at Lamar Louise Curry Middle School (the "School").

Now before the Court is a motion to dismiss filed by the Board. (the "Motion," ECF No. 13.) Having carefully reviewed the parties' submissions and the applicable law, the Court **grants** the Motion (**ECF No. 13**) as set forth below.

### 1.     Factual Background[1]

Moragas is the mother of J.M., a fourteen-year-old student at the School. (ECF No. 1 at ¶ 6.) J.M. suffers from a degenerative muscular condition that has progressed to the point where he requires a wheelchair. (*Id.* at ¶ 8.) His wheelchair is manual, and he cannot operate it independently due to his physical condition. (*Id.* at ¶ 13.) An Individualized Educational Program ("IEP") for J.M. dated April 3, 2010, notes that he requires assistance and close supervision due to motor delays and poor balance. (*Id.* at ¶ 10.)

To that end, while at school, J.M. requires assistance to change classrooms, empty and pack his backpack, and pick up lunch in the School cafeteria. (*Id.* at ¶¶ 15–19.) A teacher or school security guard typically assists him with these tasks, but no one is specifically designated to do so. (*Id.*) J.M. does not use the bathroom during the six-hour school day because no one is

---

[1]     The Court accepts as true the facts pled in the complaint. *Cf. Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.").

available to transfer him on and off the toilet. (*Id.* at ¶ 19.) The School is three-stories and, to go between floors, J.M. must use the elevator, which only School staff can operate. (*Id.* at ¶ 23.) This causes safety concerns, as there is no specific plan for assisting J.M. in the case of an emergency. (*Id.* at ¶ 22.)

On December 8, 2016, J.M.'s IEP team determined that he "would benefit from individual paraprofessional assistance to address his gross motor skills and to ensure physical safety." (*Id.* at ¶ 31; *see also* ECF No. 4-1 at p. 2.) A year-and-a-half later, on February 8, 2018, Moragas met with the School and requested the assignment of a paraprofessional to J.M. during the school day to push his wheelchair, help with his backpack and transfer him on and off the toilet. (ECF No. 1 at ¶ 28.) The School's principal then wrote to the Board on March 2, 2018, to request that a paraprofessional be assigned to J.M. (*Id.* at ¶ 32.) That letter stated that, per his "IEP," J.M. is "entitled to a one-to-one paraprofessional to meet his educational and physical needs." (ECF No. 4-2 at p. 2.)[2] At a November 13, 2018 meeting, to which Moragas attended, the School determined that J.M. was eligible for Exceptional Student Services as a result of his disability, but also informed Moragas that the Board rejected the earlier request for a paraprofessional. (ECF No. 1 at ¶¶ 26, 33; ECF No. 15-1 at p. 2.) On March 20, 2019, the Board informed Moragas that a full-time paraprofessional would be allocated to the School to support J.M.'s needs, but not in a one-to-one capacity. (ECF No. 1 at ¶ 39.) A month passed and J.M. remained without a one-to-one paraprofessional. (*Id.* at ¶ 40.) The School also did not receive an additional paraprofessional during that time. (*Id.*) So, on April 19, 2019, Moragas sued the Board through this lawsuit, seeking an order requiring the Board to assign an individual paraprofessional to J.M.

2. **Procedural Background**

The complaint alleges that the Board violated the ADA and Section 504 by failing to provide reasonable accommodations for J.M. to access his educational setting. (*Id.* at ¶¶ 52, 59.) Moragas contends that the Board's actions in failing to hire and assign a one-to-one paraprofessional constitute deliberate indifference and disability-based discrimination in violation of those statutes. (*Id.* at ¶1.)

---

[2] The Court considers this letter at the motion to dismiss stage because it is referenced in and central to the complaint, (ECF No. 1 at ¶ 32), and its authenticity is not in dispute, where Moragas attached it as an exhibit to her motion for preliminary injunction. *See Basson v. Mortg. Elec. Reg. Sys., Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018) ("The district court may also consider documents referenced in the complaint, even if they are not physically attached, if the documents are (1) central to the complaint and (2) no party questions their authenticity.").

The Board moves to dismiss both claims. (ECF No. 13.) First, the Board argues that the claims challenge the denial of a Free Appropriate Public Education ("FAPE") and thus are subject to the administrative process provided by the Individuals with Disabilities Education Act ("IDEA"), which the Board contends Moragas did not exhaust prior to initiating this suit. (*Id.* at pp. 5-13.) Second, the Board argues that Moragas fails to state claims under the ADA or Section 504. (*Id.* at pp. 13-15.) And, third, the Board argues that Moragas lacks individual standing to pursue relief in her own name under the ADA and Section 504 as a non-disabled person. (*Id.* at p. 15.)

### 3. **Legal Standard**

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all allegations in the complaint as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Id*. While the judicial review of a 12(b)(6) motion is ordinarily "limited to the four corners of the complaint," *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009), a court may nonetheless consider documents that the complaint incorporates by reference as well as matters that may be judicially noticed, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### 4. **Moragas Was Required to Exhaust the IDEA's Administrative Process**

Moragas seeks relief under the ADA and Section 504. Both claims are based on the same theory:

> [The Board] has failed to provide reasonable accommodations to J.M. by failing to hire and assign a one-to-one paraprofessional to push J.M.'s wheelchair, assist with his backpack, help him transfer to and from the toilet and provide whatever other services are reasonably necessary in order for J.M. to access his educational setting.

(ECF No. 1 at ¶¶ 52, 59.) The Board argues that the claims here challenge the denial of a FAPE, and thus are subject to the IDEA's mandatory administrative process. Because Moragas did not exhaust that administrative process, the Board contends that both claims should be dismissed. Moragas, for her part, argues that the IDEA's exhaustion requirement does not apply to her claims,

which she characterizes as seeking reasonable accommodations "to access a public facility that happens to be a school" and not the denial of a FAPE. (ECF No. 16 at pp. 5-6.)

### A. Exhaustion of the IDEA's Administrative Process is a Pre-Condition to Suit for the Denial of a FAPE

Several Acts are intended to protect the rights of the disabled, three of which are relevant here. Title II of the ADA forbids a "public entity" from discriminating based on disability. 42 U.S.C. §§ 12131-12132. Similarly, Section 504 of the Rehabilitation Act extends the application of the ADA to all federally funded "program[s] or activit[ies]." 29 U.S.C. § 794(a).

The third act, the IDEA, "offers federal funds to States in exchange for a commitment[] to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Comm'y Schs.*, 137 S. Ct. 743, 748 (2017). This act grants eligible disabled children a "substantive right" to a FAPE, including "both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Id.* at 748-49 (quoting 29 U.S.C. § 1401(9), (26), (29); *Smith v. Robinson*, 468 U.S. 992, 1010 (1984)). This "right" is guaranteed by a student's IEP, which the Supreme Court characterizes as the "centerpiece of the [IDEA]'s education delivery system." *Fry*, 137 S. Ct. at 753 (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

The IDEA does not "restrict or limit the rights, procedures, and remedies" that are available to disabled children under the ADA and Section 504. 29 U.S.C. § 1415(l); *Fry*, 137 S. Ct. at 750. But the IDEA does contain a comprehensive and carefully-tailored administrative process for resolving disputes involving a school's provision of a FAPE. *See* 29 U.S.C. § 1415(f), (g). "The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to courts to challenge the actions of the local school authorities." *N.B. by D.G. v. Alachua Cty. Sch. Bd.*, 84 F. 3d 1376, 1378 (11th Cir. 1996); *M.T.V. v. DeKalb Cty. Sch. Dist.*, 446 F.3d 1153, 1160 (11th Cir. 2006). There are four "[k]ey reasons" for this pre-suit requirement:

> 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*N.B.*, 84 F.3d at 1378-79. Failure to exhaust IDEA's administrative process is grounds for dismissal of claims for relief available under that act. *M.T.V.*, 446 F.3d at 1160.

A plaintiff cannot circumvent the IDEA's mandatory administrative process by choosing to style its claim under the ADA or Section 504. Rather, where a suit seeks relief that is available under the IDEA—even if nominally pursued through the ADA or Section 504—the plaintiff must first exhaust the IDEA's administrative process. 29 U.S.C. § 1415(l); *Fry*, 137 S. Ct. at 750, 754; *M.T.V.*, 446 F.3d at 1158 ("This Court has held 'any student who wants relief that is available under the IDEA must use the IDEA's administrative system, even if he invokes a different statute." (quoting *Babicz v. Sch. Bd. of Broward Cty.*, 135 F.3d 1420, 1422 n.10 (11th Cir. 1998)).

To determine whether a claim seeks relief available under the IDEA, courts look to "whether the gravamen of a complaint against a school concerns the denial of a FAPE." *Fry*, 137 S. Ct. at 756. If it does, then the claim seeks relief available under the IDEA and a plaintiff must exhaust administrative remedies before initiating suit. But if a claim does not challenge the denial of a FAPE and instead merely "addresses disability-based discrimination," then the IDEA's administrative process need not be exhausted. *Id.* The Supreme Court in *Fry* identified "a pair of hypothetical questions" to guide this analysis:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject . . . . But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so . . . .

*Id.* (emphases in original).

Applying that framework to this case, the Court concludes that Moragas' claims under the ADA and Section 504 challenge the denial of a FAPE. Exhaustion of the IDEA's administrative process was therefore required prior to the initiation of this suit.

### B. Both Claims Challenge the Denial of a FAPE

Moragas brings claims under the ADA and Section 504, both of which seek an order requiring the Board to "provide reasonable accommodations necessary for J.M. to access his educational setting"—namely, a "one-to-one paraprofessional" assigned to J.M. (ECF No. 1 at ¶¶ 52, 59, "WHEREFORE"

clause.) Applying the *Fry* test, the Court finds that the "gravamen" of these claims is the denial of a FAPE, meaning Moragas was required to exhaust IDEA's administrative process prior to initiating this suit. *Fry,* 137 S. Ct. at 758.

First, Moragas could not "have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school." *Id.* at 756 (emphasis in original). The relief Moragas seeks—a paraprofessional—is unique to the educational setting. Title I of 34 C.F.R. § 200, titled "Improving the Academic Achievement of the Disadvantaged," contemplates the use of paraprofessionals in the provision of academic services to disadvantaged students. 34 C.F.R. § 200.58. These regulations define a paraprofessional as an "individual that provides instructional support" to a student, to the *express* exclusion of "individuals who have *only* non-instructional duties." *Id.* at § 200.58(a)(2) (emphasis added); *K.M. v. N.Y. City Dep't of Educ.,* No. 13-cv-7719, 2015 WL 1442415, at *5 n.6 (S.D.N.Y. Mar. 30, 2015) ("A 'paraprofessional' assists the classroom teacher by providing students with 'instructional support.'"). Thus, a paraprofessional must assist with a students' academic needs, regardless of any functional assistance they otherwise provide. *See J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.,* 877 F.3d 979, 983 (11th Cir. 2017) (noting that a paraprofessional assists with using the restroom, mobility around school campus, going to lunch, and completing school work). Here, Moragas does not identify any instances where a paraprofessional was found to be a reasonable accommodation necessary to access a public entity that was not a school. The Court found none through its independent research. Because the remedy Moragas seeks is unique to the educational setting, she could not have brought her claim against a public entity that was not a school and the answer to the first hypothetical question is, therefore, "no."

Moving on to the second *Fry* question, the Court finds that an "*adult* at the school" could not "have pressed essentially the same grievance." *Fry*, 137 S. Ct. at 756 (emphasis in original). Moragas maintains that she seeks to remedy J.M.'s access to a public facility that also happens to be a school; she compares her request to claims brought under the ADA and Section 504 seeking relief for lack of wheelchair access due to structural impediments. But this comparison is inapposite because Moragas does not identify or challenge structural barriers preventing J.M. from attending class. Nor does Moragas contend that J.M. is being deprived assistance with his physical limitations during the school day (he is not). Instead, Moragas requests this Court to order the Board to provide J.M. a specific remedy—a one-to-one paraprofessional. As earlier stated, a paraprofessional is unique to the educational setting and provides "instructional support" to students. 34 C.F.R. § 200.58(a)(2). Moragas identifies no authority to support an adult or non-student's entitlement to a paraprofessional and the

Court found none through its independent research. The second *Fry* question is therefore answered in the negative.

Beyond *Fry*'s dual inquiry, there are other reasons to conclude that Moragas' claims challenge the denial of a FAPE. For one, the stated need for a one-to-one paraprofessional in this case—to allow J.M. to "access his *educational setting*," (ECF No. 1 at ¶¶ 52, 59, "WHEREFORE" clause (emphasis added))—tends to indicate that Moragas is challenging the denial of a "free and appropriate public education."

Moreover, J.M.'s IEP team approved him for "individual paraprofessional assistance" to assist him in meeting his academic and functional goals. (ECF No. 4-1 at p. 2; ECF No. 4-2 at p. 2 ("Per [J.M.'s] IEP, he is entitled to a one-to-one paraprofessional to meet his education and physical needs."); ECF No. 15-1 at p. 2); 20 U.S.C. § 1414(d)(1)(A)(i). Considering that an IEP "serves as the 'vehicle' or 'means' of providing a FAPE," *Fry*, 136 S. Ct. at 753, the Court finds that the present challenge to the Board's denial of an "individual paraprofessional"—which, apparently, is required under J.M.'s IEP—strongly indicates that the "gravamen" of this suit is the denial of a FAPE. *See L.J. by N.N.J. v. Sch. Bd. of Broward Cty.*, 927 F.3d 1203 (11th Cir 2019) ("the IEP is a proxy for the IDEA's substantive guarantee"); *see also Fry*, 136 S. Ct. at 751 (noting that "[u]nder E.F.'s existing IEP, a human aide provided E.F. with one-on-one support throughout the day" and summarizing that the Department of Education's Office for Civil Rights suggested that the "use of a human aide satisfied the FAPE standard"); *R.E. v. N.Y. City Dep't of Educ.*, 694 F.3d 167,192 (2d Cir. 2012) ("The adequacy of 1:1 paraprofessional support . . . is precisely the kind of educational policy judgment to which we owe the state deference if it is supported by sufficient evidence.").

Based on the foregoing, the Court finds that the "gravamen" of both claims asserted here is the challenge to the denial of a FAPE. *Id.* Moragas was therefore required to exhaust the IDEA's administrative process prior to filing this lawsuit. *Babicz*, 135 F.3d at 1420 ("Any student who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute.").

### C. Moragas Does Not Allege Exhaustion of Administrative Remedies

Exhaustion of the IDEA's administrative process is a non-jurisdictional condition precedent to suit. *N.B.*, 84 F.3d at 1379; *Muskrat v. Deer Creek Public Schs.*, 715 F.3d 775, 782-85 (10th Cir. 2013). A "plaintiff must generally allege in his [or her] complaint that 'all conditions precedent to the institution of the lawsuit have been fulfilled.'" *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d

992, 1010 (11th Cir. 1982) (quoting Fed. R. Civ. P. 9(c)). In her verified complaint, Moragas does not allege, even generally, that she invoked or exhausted the IDEA's administrative process. Nor does she allege that doing so would have been futile or inadequate. Because Moragas fails to allege anything at all as to whether she exhausted the IDEA's administrative process prior to initiating this suit, the Court dismisses both claims without prejudice. *Burnett v. City of Jacksonville, Fla.*, 376 F. App'x 905, 907 (11th Cir. 2010) (holding that the district court did not err in dismissing the complaint without prejudice where the plaintiff did not generally allege that "she exhausted her administrative remedies").

**5.     Conclusion**

In sum, the Court **grants** the Motion (**ECF No. 13**) and dismisses this case without prejudice. The **Clerk** is instructed to **close** this case. All pending motions are denied as a moot.

**Done and ordered**, in Chambers, at Miami, Florida, on July 18, 2019.

_____
Robert N. Scola, Jr.
United States District Judge